IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIMBERLY PRINGLE**<br>1326 Spruce Street, Unit 1404<br>Philadelphia, PA 19107<br><br>*Plaintiff,*<br><br>vs.<br><br>**QVC GROUP, INC. d/b/a QVC**<br>1200 Wilson Drive<br>West Chester, PA 19380<br><br>-and-<br><br>**QVC, INC.**<br>1200 Wilson Drive<br>West Chester, PA 19380<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. _____<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Kimberly Pringle (hereinafter referred to as "Plaintiff," unless indicated otherwise) against QVC Group, Inc. d/b/a QVC and QVC, Inc. (hereinafter "Defendants" unless indicated otherwise) for violations of the Americans with Disabilities Act, as Amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act, ("PHRA" – 43 Pa.C.S. § 951 *et seq*).[1] As a direct consequence of Defendants' unlawful actions, Plaintiff

---

[1] A reference to claims under the PHRA are made herein only for notice purposes. Plaintiff's case was administratively

seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because the contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

---

closed with the EEOC and she has thus been required to timely initiate the instant lawsuit. However, she will seek leave to amend this complaint by adding identical claims (as alleged under ADA and Title VII) under the PHRA once such claims are also fully administratively exhausted.

7. Defendants QVC Group, Inc. d/b/a QVC and QVC, Inc. operate through specific retail brands and function as a multimedia retailer selling a wide range of products internationally.

8. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single, joint and/or integrated employer for purposes of the instant action.

9. At all times relevant herein, Defendants acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

10. Plaintiff has adequately exhausted her administrative remedies under the ADA and Title VII, as she timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and brought the instant suit within ninety (90) days of receiving a right to sue letter from the EEOC.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is a Black (African-American) female.

13. Plaintiff was hired by Defendants on or about July 22, 2024.

14. In total, Plaintiff was employed by Defendants for approximately fifteen (15) months.

15. Plaintiff worked predominantly remotely, but was deemed based out of Defendants' West Chester, Pennsylvania office(s) at the above-captioned address.

3

16. Plaintiff's role was that of Head of Commercial, Shoppable Streaming.

17. Plaintiff reported to Stacie Tedesco ("Tedesco"). Tedesco – as of Plaintiff's termination from employment – functioned as the Senior Vice President, Streaming General Manager.

18. Tedesco's preferences, right or wrong, carry significant weight because of her close relationship with Defendants' Chief Executive Officer ("CEO").

19. Plaintiff suffers from various long-term and/or permanent disabilities, including but not limited to, high-functioning autism, ADHD and other complications which impact her ability to focus as well as to engage in social interactions including her ability to process non-verbal social queues, among other life activities.

20. Despite Plaintiff's disabilities, she was able to perform her job at Defendants with the reasonable accommodation of receiving agendas related to work-related goals or meetings to be provided in writing, which she requested from Defendants.

21. Plaintiff disclosed her disabilities to Tedesco, Defendant's Human Resources Department, and member of Defendants' senior leadership team.

22. Plaintiff always performed her job well and had never been warned or counseled.

23. Plaintiff had also received significant recognition and accolades from Defendants and was on the verge of being promoted (with specific discussions regarding promotion and being on track for a Vice President role as recently as March 2025), and was awarded a retention bonus in March 2025.

24. Plaintiff was subjected to and observed disparate and discriminatory treatment as a result of her race and disabilities, including but not limited to:

    a. Plaintiff was frequently subjected to stereotypical tropes of Black women or her neurodivergence including being told she was "too

4

    direct," that she was not smiling enough, and subjected to comments regarding the way she spoke;

  b. Plaintiff observed two Black employees she hired be treated disparately as compared to non-Black employees she hired including observing those employees being ignored and left out (while their non-African-American counterparts were welcomed warmly and included) as well as questioned as to why they were hired, despite having Ivy League educations and vast experience (while their non-Black counterparts' were not questioned regarding being hired in the same way);

  c. Plaintiff observed a Black contractor being treated poorly or disparately as compared to non-Black contractors;

  d. Members of the Insights team engaged in conduct that was intentionally hostile and non-collaborative toward Black employees, including the use of racially coded and explicitly racialized language. Black employees were told they needed to act with "deference," a term not applied to non-Black colleagues and not used in similar contexts with other team members. This language reflects racial stereotyping and unequal behavioral expectations;

  e. Plaintiff and other Black employees were told they needed to act with "deference." This directive was not applied universally and was not imposed on non-Black employees, reinforcing racially biased expectations regarding tone, posture, and authority.

25. As a result of Plaintiff's experiences and observations, she raised concerns of racial bias and bullying as a result of her neurodivergent status to management and HR in or about September or October 2024 and again in March or April 2025.

26. Plaintiff received no response or follow-up to her complaints.

27. In or around October 2024, Plaintiff requested the reasonable accommodation of receiving agendas related to work-related goals or meetings to be provided in writing.

28. In response, HR did not meaningfully interact with Plaintiff and her accommodation needs were not properly addressed.

29. Rather than being supported, traits explicitly connected to Plaintiff's disclosed disabilities and requested accommodations were later reframed negatively. Management attempted

5

to retroactively alter Plaintiff's job scope and characterized her disability related traits as "creating a defeated feeling" or being "bad for collaboration."

30. On or about October 30, 2024, Plaintiff voiced to Defendant's leadership that Defendant did not have proper frameworks to address race based or disability-based concerns and the following morning Plaintiff reiterated such concerns to Defendant's HR Department.

31. No one from Defendant meaningfully addressed Plaintiff's concerns or followed up in any meaningful way to address her concerns.

32. In or around May 2025, Plaintiff presented on Defendant's failure to accommodate issues and then suddenly, she was informed her anticipated promotion to VP (discussed specifically in March 2025 in conjunction with a bonus) was blocked and contradictory feedback.

33. In or around June 2025, Plaintiff escalated complaints of disparate treatment of an African-American team member and again no meaningful investigation or response was made.

34. Shortly following Plaintiff's escalation of her complaints of race discrimination and disability based discrimination, Plaintiff was involuntarily placed on paid leave beginning on or about August 6, 2025 supposedly to investigate her concerns.

35. Then, on or about October 23, 2025, Plaintiff was notified she was being terminated, post-leave placement.

36. The only intervening criteria leading up to Plaintiff's termination were her legal complaints and statutorily protected activities.

37. The following are merely examples of the communications leading up to Plaintiff's involuntary leave:

   a. On or about July 29, 2025, Karen Reitano ("Reitano"), Senior Employee Relations Partner, emailed Plaintiff that she is looking forward to a future meeting (in reference to Plaintiff's concerns) but was not "totally prepared to proceed" in another meeting yet (needing to review more information first).

6

    b. On or about August 1, 2025, Plaintiff explained via email to Reitano she was "happy to continue the conversation next week" per an invite to do so and expressed that she would benefit medically from a brief agenda being shared.

    c. On or about August 5, 2025, Reitano emailed Plaintiff "the focus of our meeting is to understand your claims of bias or discrimination on the basis of race and neurodivergence." Reitano further represented an intent to explore Plaintiff's claims of "discrimination" and matters pertaining to "ADA accommodations."

    d. On or about August 5, 2025, Plaintiff explained how she was taken aback by some of the vague language in Reitano's email softening Plaintiff's concerns (or couching them in a vague manner). Plaintiff reiterated Defendants' "failure to accommodate a known disability under federal law" and her intention to possibly seek legal counsel for "EEOC and ADA compliance." Plaintiff just asked for her concerns to be treated with more of a level of "seriousness."

    e. On or about August 6, 2025, Reitano apologized via email and clarified that Defendants were in fact investigating Plaintiff's concerns "regarding race and/or disability bias / discrimination."

38. That same day, on or about August 6, 2025, Plaintiff was placed on paid leave pending an investigation into her discrimination, non-accommodation and retaliation concerns and Plaintiff objected to Defendant placing her on leave immediately after she "raise[d] concerns related to disability discrimination, racial bias, failure to accommodate and retaliation," and that "[t]he decision to place me on leave immediately after surfacing these concerns (especially without a clear disciplinary basis) raises serious red flags about retaliation."

39. Plaintiff additionally reiterated her ADA accommodation requests via email on August 6, 2025, stating:

> I also want to formally reiterate my ADA accommodation request: I require psychological safety, clarity of scope, structured and time-bound meetings with advance agendas, and a transparent feedback mechanism that does not rely on informal channels or shifting expectations. These are not preferences... they are reasonable accommodations I've previously disclosed and requested, and they have not been consistently honored. I expect that any future engagement, including this leave process and any investigation

outcomes, will meet the standards of compliance with federal disability law.

40. As of on or about August 6, 2025, when Plaintiff was placed on involuntary paid leave, her access to any of Defendants' systems or business information was immediately canceled and/or revoked.

41. This was atypical of someone who remains employed (particularly at Plaintiff's level).

42. Moreover, it was atypical that a complainant of discrimination and non-accommodation was not permitted to continue working pending an investigation.

43. On or about August 14, 2025, Plaintiff wrote to Anthony Williams ("Williams"), the Chief People Officer ("CPO") as follows:

> I wanted to follow up to confirm the current status of my employment and the nature of the leave that was initiated on August 6, 2025. Specifically, I would like written confirmation that this leave is not disciplinary in nature and that my role, title, pay, benefits and accruals will continue without interruption during this period.
>
> Please also confirm whether there is a set duration for this leave or any criteria that will determine when I return to active duties. As I've shared previously, clarity on status and next steps is essential for me to process information and plan effectively.
>
> ***I'm happy to meet if necessary to discuss further. That said, you had previously mentioned wanting to meet before my scheduled holiday, so I was surprised not to hear back before I left. I'd like to ensure we close the loop on this promptly.*** [Emphasis added]

44. As of on or about August 14, 2025, Plaintiff was offering to meet anytime and asking for her status of employment in several ways.

45. Five (5) days later, on or about August 19, 2025, Plaintiff was sent a very harsh and antagonistic email by Williams wherein he:

    a. accused Plaintiff of "repeatedly [making] bald accusations that the company

8

        and/or various individuals within the Company are discriminating or retaliating." The common definition of a "bald accusation" is one made without any supporting evidence or justification;

    b.    asserted that Plaintiff's views of certain communications "falling short" with her were "unfounded;"

    c.    told Plaintiff she "lose[s] sight" and doesn't focus properly; and

    d.    said the sole reason Plaintiff was placed on a "paid leave of absence" was so Defendants could assess her "commitments" to the "teams' success."

46.    Notably, in the aforementioned email Williams did not say Plaintiff was on leave to assess job elimination or restructuring (discussed *infra*).

47.    Plaintiff was then left in the proverbial dark for more than two (2) months without any information on the status of her employment.

48.    Then on or about October 23, 2025, Plaintiff was informed by Williams that Defendants decided to terminate her employment (via a sudden alleged job elimination).

49.    That same day, on or about October 23, 2025, Williams followed up with a letter to Plaintiff via email memorializing her termination from employment. The letter stated:

9

> Dear Kim:
>
> I'm following up on my prior communications regarding your commitment to the QVC Group. We have found the past two months, during which you and we were able to focus on a path forward, to be valuable and we hope that you have as well. I am communicating with you today regarding your employment status.
>
> As we announced the restructure in early 2025, the Streaming team had multiple open positions and has been evolving over the past 6 months. As we announced the corporate restructure in early 2025, the Streaming team had multiple open positions and has been evolving over the past 6 months. The leadership team has continued its review of the changing needs of the company and has modified a number of the roles and updated the structure. Some of the key updates include the transfer of certain work out of the Streaming team and into other areas of the company, the discontinuation and/or consolidation of work, and the elimination of certain roles. For example, the company's Finance organization is now ready to absorb the Streaming Value team, which we originally anticipated as being a more appropriate fit, and these three roles are being transferred to Finance. We've also concluded that the Streaming team does not need the two Merch Strategy roles that were originally designed to work with the company's central Merchandising organization. Rather than continue the 3P/Shopify work they were doing prior to your leave of absence, which you were specifically directed to stop doing, these roles are being eliminated while the Merch strategy work is absorbed into our Streaming Commercialization team and execution work through the centralized Merch team.
>
> Accordingly, your role as Director, Head of Commerce – Streaming is being eliminated. Your employment will end, effective November 7, 2025, and you will be eligible to receive a separation package through the company's severance plan. Attached please find a copy of your Personal Benefits Summary showing the benefits to which you are entitled, provided you sign the corresponding separation agreement and release which will be delivered to you through AdobeSign on or about your separation date of November 7th. You will continue to be on paid leave of absence through November 7th.
>
> We thank you for your service and contributions during your tenure and look forward to supporting you through this transition.
>
> If you have any questions, please contact me.

50. In his letter, Williams confirmed a restructuring took place in "early 2025" (not later).

51. Plaintiff was not part of that early 2025 restructuring, despite a reference thereto.

52. In fact, Plaintiff received a retention bonus even **after** the early 2025 reorganization or restructuring to incentive her to remain employed.

53. As discussed *supra*, in emails to Plaintiff during her involuntary paid leave, there was dialogue that she was only on leave to investigate her concerns or that Defendants were evaluating her level of commitment to be returned to work.

54. Defendants never mentioned job elimination to Plaintiff prior to October 23, 2025.

55. As a result of Plaintiff's separation from employment (referred to as a job elimination), Defendants provided with Plaintiff with an unsolicited "Confidential Separation and

10

General Release Agreement" offering her "12 weeks" of severance compensation if she agreed to waive all discrimination and retaliation claims (among other employment-related concerns).[2]

57. Plaintiff believes and therefore avers that her disabilities and her race were motivating/determinative factors in Defendants' decision to terminate her employment and/or because she complained of race and disability discrimination.

**COUNT I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Failure to Accommodate; [4] Hostile Work Environment)**

57. The foregoing paragraphs are incorporated herein by reference as though set forth in full.

58. At all relevant times, Plaintiff was qualified to perform all of the essential functions of her job with or without accommodations.

59. Plaintiff requested very reasonable accommodations, but Defendants denied Plaintiff those accommodations.

60. Plaintiff raised repeated complaints that Defendants were not accommodating her disabilities and were discrimination against her based on those disabilities.

---

[2] This unsolicited severance agreement supports Plaintiff's claims of retaliation and can be used as evidence of pretext. *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *See also Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]", and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

61. Defendants completely failed to engage in the interactive process, and did not investigate Plaintiff's legitimate complaints of discrimination.

62. Further, Williams berated Plaintiff because of her requests for accommodations and complaints of disability discrimination.

63. Plaintiff was then abruptly terminated under false and pretextual circumstances on or about October 23, 2025.

64. Plaintiff believes and therefore avers that her disabilities, requests for accommodations, and complaints of disability discrimination were motivating/determinative factors in Defendants' decision to terminate her employment.

65. These actions as aforesaid constitute violations of the ADA.

## COUNT II
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. During Plaintiff's employment with Defendants, she was subjected to discrimination through disparate treatment because of her race.

68. Plaintiff raised complaints of race discrimination to Defendants.

69. Further, Williams berated Plaintiff because of her complaints of race discrimination and she was placed on a retaliatory suspension.

70. Plaintiff was abruptly terminated under false and pretextual circumstances on or about October 23, 2025.

71. Plaintiff believes and therefore avers that her race or color and complaints of race discrimination were motivating/determinative factors in Defendants' decision to terminate her

employment.

72. These actions constitute discrimination and retaliation under Title VII.

## COUNT III
### Violations of 42 U.S.C. Section 1981
([1] Race Discrimination; [2] Retaliation; [3] Hostile Work Environment)

73. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

74. During Plaintiff's employment with Defendants, she was subjected to discrimination through disparate treatment because of her race.

75. Plaintiff raised complaints of race discrimination to Defendants.

76. Further, Williams berated Plaintiff because of her complaints of race discrimination and she was placed on a retaliatory suspension.

77. Plaintiff was abruptly terminated under false and pretextual circumstances on or about October 23, 2025.

78. Plaintiff believes and therefore avers that her race or color and complaints of race discrimination were motivating/determinative factors in Defendants' decision to terminate her employment.

79. These actions constitute discrimination and retaliation under Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by

applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

  D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

  E. Plaintiff is to be given a jury trial as demanded in the caption of the instant Complaint.

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

    By: _____
      Ari R. Karpf, Esq. (91538)
      8 Interplex Drive, Suite 210
      Feasterville-Trevose, PA 19053
      akarpf@karpf-law.com
      (215) 639-0801

Dated: January 27, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Kimberly Pringle | : | CIVIL ACTION |
| v. | : | |
| QVC Group, Inc. d/b/a QVC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (x)

| 1/27/2026 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / [X] **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
[X] 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  *see certification below*
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / [X] **does not** have implications beyond the parties before the court and ☐ **does** / [X] **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X]    Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐    None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PRINGLE, KIMBERLY

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
QVC GROUP, INC. D/B/A QVC, ET AL.

County of Residence of First Listed Defendant: Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability |  | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations |  | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |  | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** |  | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee |  | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence |  | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [X] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty |  | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property |  | **IMMIGRATION** |  |  |
|  | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 448 Education / [ ] 540 Mandamus & Other / [ ] 550 Civil Rights / [ ] 555 Prison Condition / [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 465 Other Immigration Actions |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 1/27/2026   SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____